JUAN JOSÉ GERARDINO, Plaintiff and Appellant, *v.* SUCCN. OF EMILIO B. DURÁN, ETC., Defendant and Appellee.

No. 5814.   Argued February 14, 1933.—Decided March 10, 1933.

*Leopoldo Tormes* and *F. Colón Díaz* for appellant.   *F. B. Fornaris* for appellee.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the Court.

This is an action of debt in which, among other things, it is alleged that Emilio B. Durán, in April, 1923, borrowed the sum of $908 from the plaintiff to pay the premiums of certain insurance policies that had been taken with the

Manufacturer's Life Insurance Co., said Mr. Durán promising to return said sum with interest upon the payment of an indemnity which he expected to collect for damages sustained in the sinking of the S. S. "Carolina" during the World War. It is also alleged that Durán's widow, Monserrate Rivera, as his sole heir, received the indemnity from the German Government and that, despite the efforts of the plaintiff to collect, she has not paid the said sum nor any part thereof.

The plaintiff, Juan José Gerardino, appealed from the judgment in favor of the defendant rendered by the lower court. It is alleged, in the first place, that the court erred in permitting Monserrate Rivera, surviving wife and heir of Emilio B. Durán, to testify concerning communications made to her by her late husband, in spite of the strenuous opposition that was made in due time and form by the plaintiff, all of which violates section 3 of the Act of March 10, 1904, which repealed section 1215 of the Civil Code and the decision of this Court in the case of *Wilcox* v. *Axtmayer et al.*, 23 P.R.R. 319.

Before discussing this alleged error, we wish to transcribe the findings of fact made by the lower court, thus:

"After weighing all the evidence, the court concludes that it has been proved that in or about the month of May, 1923, Emilio Baudilio Durán, husband of Monserrate Rivera, the defendant in this case, was a poor man who earned about $900 a year at his employment and whose state of health was bad, since he was suffering from pulmonary tuberculosis from which disease he died on July 19, 1924; that on May 14, 1923, said Emilio Baudilio Durán insured his life with the Manufacturer's Life Insurance Co. through its agent in Ponce, Joaquín Tellechea, taking three policies for the sums of $1,000, $4,000, and $15,000, on which the annual premiums were respectively, $45.40, $181.60, and $681; that the premiums for the first year amounting to $908 were paid by the plaintiff in this case, Juan José Gerardino, to Mr. Tellechea on behalf of said Emilio Baudilio Durán because, while policy No. 283438 for $1,000 was made in favor of and payable to his wife, Monserrate Rivera, policies

No. 283436 and No. 283437, respectively for $4,000 and $15,000, were made in favor of and payable to the 'executors, administrators, and assigns' of said Emilio Baudilio Durán; and it was agreed between the plaintiff, Juan José Gerardino, and said Emilio Baudilio Durán that Gerardino should keep possession of these two policies, which he did, and that Durán should give the $1,000 to his wife; that said Emilio Baudilio Durán never agreed to pay the plaintiff the amount of said premiums with what he might obtain from the government as indemnity for damages sustained in the sinking of the ship 'Carolina', since said proceedings had not yet been started on that date, but that it was the intention of the parties to the agreement, that the two policies for $4,000 and $15,000 should be opportunely indorsed by Emilio Baudilio Durán in favor of the plaintiff as assignee, and that it was in consideration of this that he made the other policy for $1,000 payable to his wife; that for reasons that do not appear clearly from the evidence, but that are easily understood, none of the said policies were renewed after the end of the first year, it being an indisputable fact, however, that Emilio Baudilio Durán died of tuberculosis scarcely four months after the end of the first year.''

In our opinion the judgment appealed from may be upheld without resorting to the statement made by the widow, Monserrate Rivera, that are based on information received from her husband. The court, in rendering its judgment, weighed the evidence for both sides. We shall examine this evidence and disregard the information that the widow, Monserrate Rivera, may have derived directly from her husband. It has been shown that Durán earned from $10 to $15 weekly, and that he depended entirely upon his salary for his living. In spite of his poverty, he appears insuring himself for $20,000, and paying the premiums for the first year amounting to $908, which sum was loaned to him by the plaintiff, Juan José Gerardino. This $20,000 was distributed by the insured into three policies, one for $1,000 in favor of his wife, and the others, respectively for $15,000 and $4,000, in favor of his executors, administrators, and assigns. All of these operations are the component parts of a single transaction in which the insured, Emilio Durán, the

representative of the insurance company, Joaquín Tellechea, and the plaintiff, Juan José Gerardino, participated. It is significant that Durán, who earned a limited salary and had no private means, should find a person to lend him $908 with which to insure himself, on the vague promise that he would return the money when he collected an indemnity that he hoped to receive as a survivor of the sinking of the S. S. "Carolina." This loan was made in 1923 to a man who was ill with tuberculosis, and was to be collected on an indefinite date in the event that Durán should obtain the indemnity which he believed was due him. This indemnity was paid six years later, in 1929, and Durán died a year after Gerardino had supplied the $908. Mr. Gerardino, however, did not give much thought to this possible future event, upon which collection of his claim depended. He was more interested in insuring the life of Mr. Durán to whom he did not hand over any money until the business of the policies was terminated, taking good care to keep said policies in his possession. His own witness, Mr. Tellechea, the agent for the insurance company, who allowed a sick and insolvent man to obtain insurance amounting to $20,000, gives us the key to Gerardino's interest in insuring Durán, and in keeping the policies in his possession. Tellechea testified that he delivered the policies to Durán who kept the one for $1,000 issued in favor of his wife, and delivered the other two amounting to $19,000 to Gerardino. The attorney for the defendant asked him, showing him one of the policies, why was the same in the possession of Gerardino and not in that of Durán or of his family, and the witness answered: "precisely because this is the document which secured the transaction, the loan." Tellechea also testified that since it was Gerardino who was going to supply the money, he exacted from Durán that the policies be definitive before transacting the business or supplying the money. Why was Gerardino so interested in the policies? Why did he keep them in his possession? Was he thinking of collecting his

credit from the proceeds of the policies, when Durán should die, or was he expecting the indemnity from the sinking of the "Carolina"? There is no doubt that these policies were made for a purpose. That it was not Durán's intention to benefit his wife with the total proceeds of the insurance is shown by the fact that from the whole transaction, he separated one policy for $1,000 issued in her favor, which he kept in his possession, and that he delivered the other policies payable to his executors, administrators, and assigns, to Gerardino. Whom, if not his wife, did Durán wish to benefit by these policies? He had no other heirs and his wife was the only person he could have been interested in protecting. Surely he meant to benefit Juan José Gerardino. This is the name that suggests itself the moment the details and circumstances surrounding this unpleasant transaction are made known. How? The record does not produce the clearness necessary in this case. The policies were to be paid to the executors, administrators, and assigns. The lower court in its findings of fact concludes that the intention of the parties was that these policies should be opportunely endorsed by Emilio Durán in favor of the plaintiff. It is a fact, nevertheless, that a year passed, without the new premiums being paid, and that the insurance was not collected because the premiums were not finally paid. When Tellechea was asked whether he remembered if Mr. Gerardino had sent a check to cover the premiums which was returned because it arrived too late, he answered that he did not remember. As everything in this case seems unusual and extraordinary, a promissory note signed by Durán was offered in evidence. The widow testified emphatically that it was not her husband's signature. The court refused to admit the note on the ground that the action was not based on the note, and the defendant alleged that she had been surprised by such evidence. The plaintiff noted his exception to this ruling but the question has not been raised in the assignment of errors.

Durán, in his will which makes his wife his heir, states that he has contracted no debts. Durán, who had nothing but his salary, left to his wife whatever might be obtained from a suit that was pending, and also the indemnity for the sinking of the S. S. "Carolina."

The widow testified that Mr. Gerardino had a scheme for insurance, and since her husband was in ill health, Gerardino wanted to insure him. Since this woman's testimony rests principally on communications made by her husband, we will not examine it in its entirety, but we will copy an excerpt from the testimony of Marcelino Rivera which was admitted without objection and which, in its last part, reads as follows:

"Well, I had come to Ponce to do some errands and, as is always my custom, to see my sister; after having been a while with her, and with another friend who was with me, her husband came in a little later, and somewhat despondently handed her—'here is something for you.' He was already very sick, this is shown by the fact that he died the following year. He said, 'since I have but a short time to live, my health is now bad . . . .' And he produced a policy for $1,000. 'You have done this?' she said; and he said, 'Yes, since I have nothing left to lose, I have nothing left, I have done this, but I am disappointed because Mr. Gerardino promised to give me $5,000 and to pay the expenses, and at the last minute he has given me only $1,000 and has kept $19,000.' And my sister and I reproached him—'that's not right'—because he could still be cured and he knew that he had a brother-in-law who could work to help his sister if he should fail her some day. And I said to him, 'Nineteen thousand dollars is a sum large enough to get anyone into trouble', and I advised him not to do that."

Really, this testimony has a marked degree of veracity when it is examined in connection with the evidence of the plaintiff. The loan that appears to have been made to Durán, in the vague expectation of recovery in the future, upon payment of a certain indemnity; the attitude of the represen-

tative of the insurance company in insuring a sick person of known insolvency; the separation of a $1,000 policy for the wife; the delivery of the other two policies to Gerardino to be kept in his possession; the latter's manifest interest in insuring Durán and in obtaining possession of the said policies, are details and circumstances that tend to show that there was foul play in this case, and that Gerardino did not supply the $908 in expectation of repayment from Durán, as he knew that the latter could not pay because he was absolutely insolvent, and also a very sick man when the transaction took place. It seems clear that a loan was not made, and that Durán did not benefit by the money, and that therefore his widow and heir is not bound to pay the same.

It is alleged that the lower court erred in allowing an amendment to the answer in order to conform it to the evidence alleged to have been illegally admitted during the trial against plaintiff's objection. We have already stated that the evidence presented is sufficient to justify the judgment of the lower court even when the testimony of the wife, which was based on communications made by her husband, is disregarded. The plaintiff has not proved that the sum claimed was furnished as a loan. This, in our opinion, is the obvious conclusion to be drawn from his own evidence, and it is corroborated and strengthened by an examination of the evidence as a whole, excluding Durán's communications to his wife.

The third and fourth errors which deal with the weighing of the evidence, were not committed for the reasons hereinbefore stated. The court did not err in adjudging the plaintiff to pay the costs.

The judgment appealed from must be affirmed.